**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF GERALDINE F. ALTLAND, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: DAVID F. ALTLAND | : | |
| | : | No. 867 MDA 2025 |
| | : | |

Appeal from the Order Dated June 6, 2025
In the Court of Common Pleas of York County
Orphans' Court at No(s): 6723-0790

BEFORE: BOWES, J., DUBOW, J., and NEUMAN, J.

MEMORANDUM BY BOWES, J.:             **FILED: JULY 17, 2026**

David F. Altland ("David") appeals from the order that denied his petition for declaratory judgment in the form of interpreting the will of Geraldine F. Altland ("Decedent").[1] We vacate and remand with instructions.

Clair R. Altland ("Clair") and David are the sons of Decedent, who died testate in February 2023 at the age of ninety. Decedent's May 2020 will ("the Will") contained eight items for the disposition of her estate ("the Estate"). Item 1 directed payment of expenses, including all debts and funeral costs. Item 2 bequeathed all of Decedent's personal property, excluding cash, in equal shares to Clair and David, to be divided in kind by their agreement. Item 3 devised the residue of the Estate to Clair and David in equal shares,

---

[1] Although the orphans' court purported to deny the petition, it effectively granted it insofar as it interpreted Decedent's will. Thus, this appeal is properly before us pursuant to Pa.R.A.P. 342(a)(3) (providing an appeal may be taken as of right from an order interpreting a will).

with ultimately unneeded contingent beneficiary designations. Item 4, at issue in this appeal, gave David six months to exercise a right of first refusal "to take my farm located at 3470 Tunnel Hill Road, Seven Valleys, PA 17360, as his share of my estate, which for this purpose shall be valued at four hundred thousand ($400,000) dollars." Will, 5/28/20, at unnumbered 2. Item 5 addressed the establishment of trusts for young contingent beneficiaries, Item 6 appointed Clair and David as co-executors, and Item 7 stated a spendthrift provision. Finally, Item 8 discussed taxes.

The Will was admitted to probate in March 2023, and Clair and David were granted letters testamentary. David timely expressed his intention to proceed in accordance with Item 4 of the Will and take Decedent's farm, but he and Clair disagreed about the consequences of that election. David, who was in possession of the real property, took the position that he was required to pay $400,000 to the Estate to retain the farm, with that sum added to the Estate's residuary to be divided in accordance with Item 3 of the Will. David alternatively suggested that his exercise of the option meant that the farm became his share of the Estate without paying anything for it, and the rest of the residuary became Clair's share. For his part, Clair deemed Item 4 to require David to pay Clair $400,000 for the farm and to allow Clair to take the rest of the Estate as his share.

The Estate was originally represented by the scrivener of the Will, Sharon E. Myers, Esquire. With the consent of both Clair and David, she

withdrew her appearance in June 2023, and Alex Snyder, Esquire entered his appearance two months later. In April 2024, with Clair and David each having retained their own counsel, Attorney Snyder filed a petition for declaratory judgment asking the court to interpret the Will.

Therein, Attorney Snyder outlined the brothers' respective positions. He further observed that the farm was the primary asset of the Estate, last assessed at $324,280 with the county's common level ratio being 1.22 at the time Decedent executed the Will in 2020, but "likely ha[ving] a higher fair market value than the value assigned within the Will[.]" Petition for Declaratory Judgment, 4/15/24, at 5. Indicating that the language of Item 4 was ambiguous, Attorney Snyder opined that requiring David to pay Clair $400,000 for the farm and retaining its additional value, and Clair also taking the whole remainder of the residuary, was in keeping with Decedent's intent that her sons share equally in her Estate.

The orphans' court issued a rule to show cause why the petition should not be granted, and the parties appeared to argue their positions. The court entered an order at the conclusion of the proceeding allowing the parties to file briefs before the court would "make a determination as to the impact of the positioning of the [W]ill's residue clause affecting the follow-up paragraph in question which addresses the right of first refusal." Order, 6/12/24, at 2. The order continued: "Additionally, the [c]ourt will make a determination as to whether the will itself is ambiguous, either based upon the residuary clause

- 3 -

trumping the right of first refusal or if the right of first refusal simply is a funding mechanism for the residuary clause." *Id*. The court added that it would schedule a hearing for the presentation of extrinsic evidence in the event that it deemed the will to be ambiguous, but otherwise would issue its ruling. *Id*.

In his brief on behalf of the Estate, Attorney Snyder advocated for the finding of an ambiguity and emphasized the relevance of extrinsic evidence to resolve it, including information about the value of the farm, statements Decedent made about her wishes, and Attorney Myers's understanding of transfer tax implications. *See* Memorandum of Law, 7/19/24, at 8. Clair in his brief presented a new interpretation, arguing that the Will unambiguously allows David to take as his share of the Estate not "the full value of the farm, but the first [$400,000] of it[,]" with the remaining value, estimated to be $1.1 million, to "be distributed in accordance with the residuary clause[.]" Brief (Clair), 7/19/24, at 5. David highlighted the fact that the Will permits him to "take" the farm as his share, not to pay for it, but, if a $400,000 payment was required, he contended that it should go to the Estate rather than Clair. *See* Brief (David), 7/19/24, at unnumbered 7-9. Alternatively, David suggested that, if the Will was ambiguous, extrinsic evidence should be considered to determine Decedent's intent. *Id*. at 9-10.

The orphans' court went in a different direction. It concluded that, because the farm had already been devised outright and absolutely to the

brothers in Item 3 of the Will as part of the residue of the Estate, Item 4 was non-enforceable precatory language. On that basis, the court denied the petition for declaratory judgment. *See* Order, 6/9/25, at 9. David sought reconsideration. In the absence of any ruling thereupon by the court, David filed the instant timely appeal. David and the court thereafter complied with their respective obligations pursuant to Pa.R.A.P. 1925.

David presents the following questions for our resolution:

[1.] Is the right of first refusal granted to David in Item 4 of Decedent's Will valid and enforceable?

[2.] Does the placement of the residuary clause in Item 3 of Decedent's Will render the right of first refusal at Item 4 precatory and unenforceable, where there is no language in the Will which indicates that the right of first refusal is intended to be wishful in nature?

[3.] Can Items 3 and 4 of the Will be read together and implemented so as to give primary consideration of the Decedent's intentions as set forth in her Will?

[4.] Should the court enforce Item 4 of the Will where it contains mandatory language expressing manifest intention to control or direct and all portions of a Will should be given meaning and effect?

[5.] Should David be permitted to take the farm as his share of the Estate without making any related payment for the farm, while his brother Clair would retain all other assets as his share of the Estate?

[6.] Alternatively, should David be able to retain the farm by making a payment of $400,000 to the Estate itself, where that payment would become a part of the residuary assets to be distributed between David and Clair pursuant to Item 3 of the Will?

[7.] Alternatively, should this matter be remanded to the [orphans'] court to conduct a hearing to enable the parties to

- 5 -

present extrinsic evidence as to the Decedent's intentions and resolve any ambiguous language contained in the Will?

David's brief at 3-4 (surnames and unnecessary capitalization omitted).[2]

David's issues primarily concern interpretation of the Will, which "is a question of law, and thus our standard of review is *de novo* and our scope of review is plenary." ***Murphy v. Karnek***, 160 A.3d 850, 862 (Pa.Super. 2017). In this vein:

> It is now hornbook law (1) that the testator's intent is the polestar and must prevail; and (2) that his intent must be gathered from a consideration of (a) all the language contained in the four corners of his will and (b) his scheme of distribution and (c) the circumstances surrounding him at the time he made his will and (d) the existing facts; and (3) that technical rules or canons of construction should be resorted to only if the language of the will is ambiguous or conflicting or the testator's intent is for any reason uncertain.

***Id***. at 861 (cleaned up). Regarding the existing facts, we have elucidated:

> [T]he Court must place itself in his armchair and consider not only the language and scheme of the instrument but also the facts and circumstances with which he was surrounded; and these surrounding facts and circumstances include the condition of his family, the natural objects of his bounty[,] and the amount and character of his property.

***In re Estate of Cassidy***, 296 A.3d 1219, 1223 (Pa.Super. 2023) (cleaned up). The relevant timeframe in examining the facts is not at the time of the

---

[2] While David states seven questions, the argument portion of his brief is not divided into corresponding parts as is required by Pa.R.A.P. 2119(a). Instead, he assails the trial court's construction then advances his alternate interpretations. Our review will follow the progression of the arguments rather than address David's discrete questions *seriatim*.

- 6 -

court's review.  Rather, "in ascertaining the testator's intention, a will is to be construed as of the date of its execution." *In re Estate of Tscherneff*, 203 A.3d 1020, 1024 (Pa.Super. 2019) (emphasis omitted).

This Court has observed that, "[w]here words used might under a given construction lead to a result that is highly improbable, the court will lean toward a construction that will carry out the natural intention of the testator." *In re Estate of McFadden*, 100 A.3d 645, 650 (Pa.Super. 2014) (cleaned up).  However, if "there are objective indications that the terms of the document are subject to differing meanings" that are each plausible, then the will is ambiguous.  *See Estate of Cassidy*, 296 A.3d at 1223 (cleaned up).

Ambiguities can be patent or latent.  "A patent ambiguity appears on the face of the document and is a result of defective or obscure language.  A latent ambiguity arises from collateral facts which make the meaning of a written document uncertain, although the language appears clear on the face of the document." *In re Estate of Schultheis*, 747 A.2d 918, 923 (Pa.Super. 2000) (cleaned up).  When either type of ambiguity exists, extrinsic evidence "is admissible to explain or clarify or resolve the ambiguity." *Kripp v. Kripp*, 849 A.2d 1159, 1163 (Pa. 2004).

Extrinsic evidence, such as the testimony of the scrivener, "must only relate to the meaning of ambiguous words of the will.  It cannot be received as evidence of testator's intention independent of the written words employed." *Estate of Cassidy*, 296 A.3d at 1224 (cleaned up).  In other

words, parol evidence concerning a testator's intent may not contradict or alter the will, but only aid in interpreting the ambiguous language. *See Logan v. Wiley*, 55 A.2d 366, 369 (Pa. 1947). Moreover, "where a patent ambiguity exists on the face of the will and the language is meaningless or senseless or so uncertain as to be unintelligible as written, parol evidence to explain it is not admissible." *Estate of Cassidy*, 296 A.3d at 1224 (cleaned up).

Mindful of these principles, we examine the language of the Will in question. Other than providing for the payment of expenses and taxes, the Will directs the distribution of Decedent's property thusly:

**Item 2. Tangible Personal Property**

I give and bequeath all tangible personal property which I may own at the time of my death excluding cash and evidences thereof, but including any automobiles, together with my insurance policies thereon in equal shares to my sons, [Clair and David], or to the survivor of them, to be divided between them in kind as they may agree, or to their issue per stirpes.

**Item 3. Gift of Residue of my Estate**

I give, devise and bequeath all of the rest, residue and remainder of my estate, real, personal and mixed, of whatever kind or character and wherever situated, which I may own or have the right to dispose of at the time of my death in equal shares to my sons, [Clair and David].

A. In the event that [David] does not survive, then his share shall pass in equal shares to Karen Altland and Jessica Pape.

B. In the event that [Clair] does not survive, then his share shall pass as follows:

1. One-fourth to Shirley Altland.

2. One-fourth to Matthew Altland.

> 3.    One-fourth to Jason Altland.
>
> 4.    One-fourth to Myla Altland.
>
> ### Item 4.  Right of First Refusal
>
> I give six months to exercise the right of first refusal to [David], to take my farm located at 3470 Tunnel Hill Road, Seven Valleys, PA 17360, as his share of my estate, which for this purpose shall be valued at four hundred thousand dollars.  In the event that David does not survive, I give the right of first refusal to Karen Altland.

Will, 5/28/20, at unnumbered 1-2 (duplicative parenthetical numbers omitted).[3]

As noted above, the orphans' court concluded that Item 4 did not create an enforceable right of first refusal, but was instead mere precatory language. Precatory words are those "requesting, recommending, or expressing a desire rather than a command."  PRECATORY, Black's Law Dictionary (12th ed. 2024).

---

[3] Our review of the certified record did not readily reveal the relationships of the other Altlands referenced in Item 3 to Decedent or the respective brothers. The value of the Estate is likewise unknown, as Attorney Snyder and David have suggested that the farm, the primary asset of the Estate, was worth roughly $400,000 when Decedent executed the Will; Clair estimates that the farm is presently worth $1.5 million; yet the most recent tax document included in the certified record indicates that the Estate's total assets were only worth slightly more than $200,000.  Consequently, it is difficult, if not impossible at this stage, for the orphans' court or this Court to "place itself in [Decedent's] armchair" and consider the surrounding facts of "the condition of h[er] family, the natural objects of h[er] bounty[,] and the amount and character of h[er] property."  ***Estate of Cassidy***, 296 A.3d at 1223 (cleaned up).

> When precatory words are used merely for the purpose of advising or influencing, or expressive of a wish or desire that the legatee make a certain use of the testator's bounty, they are not obligatory upon that to whom they are addressed; but when used to express his manifest intention to control or direct, they are mandatory, and will be so construed in saying what effect is to be given to them.

*In re Estate of Mumma*, 125 A.3d 1205, 1213 (Pa.Super. 2015) (cleaned up). "The test is whether the precatory expression was used in a mandatory sense, though couched in a mild, polite, courteous command, or only as suggestion or wish, falling short of binding and compulsory direction." *Id*. (cleaned up).

The orphans' court founded its ruling upon the perceived likeness of Item 4 to language at issue in *In re Herskovitz's Estate*, 81 Pa.Super. 379 (1923). In that case, with contingencies not relevant here, the will devised all the decedent's property to his widow. The will then indicated that she "must see and comply with [his] last requests," which included various charitable gifts. *Id*. at 380. After detailing instructions for the decedent's remains and the education of his son, the will expressed the decedent's "hope, wish and demand that every point of my last will shall be wholly fulfilled by my lawful wedded wife to a T," and listed additional requests about things such as the care of the decedent's mother-in-law and son. *Id*. When some of the charities reached out to the widow for the sums mentioned in the will, she opined that the pertinent language of the will precatory and the orphans' court agreed.

This Court affirmed, explaining that the expression of what the testator desired for the disposition of his assets is an enforceable command for how the estate should be distributed, "but when the testator expresses a desire as to what the legatee or devisee shall do with the estate bequeathed to him, the words are merely precatory." *Id*. at 382–83. Applying this distinction to the will before it, the ***Herskovitz's Estate*** Court ruled:

> There is in this will an absolute estate given to the widow of the deceased. It is a gift without any limitation over, and without the intervention of a trustee. Having vested the property in her she is asked to comply with the testator's requests; she is to be the actor in the matter; she shall pay out as charity certain sums. He expresses the hope, wish and demand that his wishes may be carried out. If the bequest had been given directly by the testator, a different proposition would present itself, but having disposed of his entire personal estate absolutely to his widow and subsequently expressed his desires as to what she should do with it, we must hold that such words do not affect the quality or diminish the quantity of her estate, but merely indicate a desire or recommendation on the part of the testator that the primary object of his bounty may at some time do what he asks her to do. Even if the words are such as may be ordinarily regarded as commands, they are not sufficient to establish an intention, that is not to be gathered from a consideration of the operative words upon the face of the instrument.

*Id*. at 382–83 (cleaned up).

The orphans' court explained its application of this precedent to the case *sub judice* as follows:

> Here, similar to ***Herskovitz's Estate***, [Decedent] granted a right of first refusal such as may ordinarily be regarded as a command. Nevertheless, those words followed a clause in which [Decedent] disposed of her real estate absolutely, without condition, in the residuary clause at Item 3. Having done so, [Decedent] may not subsequently purport to dictate what her

- 11 -

beneficiaries may or may not do with the real estate upon acquiring ownership in common with one another absolutely.

. . . .

Here, the language used by [Decedent] in the residuary clause evidences a dominant intent to bequeath to her children, without condition or restriction, her entire estate, including the real estate. [Decedent] did not use any language in the residuary clause evidencing an intent that the bequest of all her property was to be conditioned or encumbered in any way. Rather, the devise and bequest was outright and absolute. As such, a fair reading and consideration of the document as a whole reveals that the words must be deemed precatory and non-enforceable.

Order, 6/6/25, at 8-9 (cleaned up).[4] In this Court, Clair has switched positions again, now primarily advocating the rationale of the orphans' court. *See* Clair's brief at 10.

David argues that the analysis of the orphans' court placed undue import on the placement of the right of first refusal within the instrument. He highlights that the language of Item 4 does not suggest wishfulness or a non-mandatory recommendation on the part of Decedent, but rather the grant to David of an enforceable right to a specific portion of the residuary. *See* David's brief at 20. David further observes that the construction of the orphans' court "effectively delet[ed] the entirety of Item 4" from the

_____

[4] Without explanation, the orphans' court switched to male pronouns for the in this portion of its order, despite using she and her to refer to Decedent in its findings of fact. In embracing the court's analysis, Clair also adopted the practice of using he/him to refer to his mother. In the absence of any indication that Decedent preferred male pronouns, we have substituted her for him within the quotation.

document, which is "contrary to the longstanding legal principle that all portions of a Will should be given meaning and effect." *Id*. at 21.

We agree with David that the trial court erred in deeming Item 4 to be unenforceable precatory language. Our ruling in **Herskovitz's Estate** is inapposite. Decedent here did not give all her property to one person then tell that person what she wanted him to do with it. Nor did she specify that she was devising the farm to both brothers, but then suggest that Clair should nonetheless allow David to swap other residual assets in exchange for his half of the real estate if David wanted it.

Unlike in **Herskovitz's Estate**, we have here an instrument devising a residual corpus composed of various assets to two people, thus necessitating the division of the residue into separate shares. While Item 3 provides no direction as to how the corpus is to be split between the brothers, Item 4 speaks to that issue, allowing David to name the farm as his share if he so chooses. Otherwise, given that the brothers are co-executors, all the property bequeathed to them in Item 3 would have to be divided between them by agreement, similar to the personal property addressed in Item 2.

Therefore, we hold that Item 4 is not a mere precatory clause, but one commanding that David has an enforceable right to take the farm as his share of Decedent's estate. *Cf. In re Estate of Haugh*, 331 A.3d 605, 2024 WL 4664488, at *7 (Pa.Super. 2024) (non-precedential decision) (holding widow had no enforceable right to continued compensation from the decedent's

corporation where his will devised all his stock to his children and grandchild and then directed them to keep the widow on the payroll for her lifetime).

Having determined that Item 4 is mandatory rather than precatory, we now consider what it mandates. David argues that the clear implication of the Will's indication "that David may 'take the farm . . . as his share of [decedent's] estate,' . . . is that David may retain the farm without making any payment, and that Clair may retain all other assets as his share of the Estate." David's brief at 22-23. He alternatively asserts that, if Item 4 imposes "a $400,000 payment obligation upon David, that payment should be made to the Estate itself, where it would be a part of the residuary assets to be distributed between David and Clair pursuant to Item 3 of the Will." *Id*. at 23. Finally, if we accept neither of those as the unambiguous significance of Item 4, David points to the various interpretations offered by the parties during the course of this litigation and suggests that the Will is unclear as to Decedent's intent, and that the case should be remanded for the introduction of extrinsic evidence to resolve the ambiguity. *Id*. at 27-28.

Clair suggests his own clear and unambiguous meaning of Item 4 to this Court in the alternative to deeming it precatory. Specifically, he advances his contention that Decedent plainly "wanted to give David a benefit up to a certain value ($400,000.00), while still benefiting her other son, Clair." Clair's brief at 19. Therefore, to exercise his option to take the farm, David must pay $1.1 million into the Estate, which Clair estimates to be the difference

between $400,000 and the yet-to-be-established current market value of the real estate. *Id*. at 14.

To evaluate these arguments, we once again review the implicated language of Item 4, which gave David the right "to take my farm located at 3470 Tunnel Hill Road, Seven Valleys, PA 17360, as his share of my estate, which for this purpose shall be valued at four hundred thousand ($400,000) dollars." Will, 5/28/20, at unnumbered 2.

We perceive this language to be ambiguous. The first portion of the provision seems to be clear in giving David the right to take the farm as his overall share, but the following clause obscures the bequest. In particular, it is unclear to us to what the $400,000 valuation applies. It could indicate that, for the purposes of Item 4, the Estate is deemed to be worth that amount. It might establish a quantification of David's share. The number could instead signal the worth of the farm for the sake of calculating the value of the residue of the Estate.

Viewing the Will as a whole, it is manifest that Decedent wished her two sons to take equal shares of the Estate. She also plainly wanted to give David the option to take her farm intact as his share rather than subjecting it to liquidation, subdivision, or co-tenancy. How the reference to $400,000 impacts the effectuation of Decedent's intent is uncertain from the language Attorney Myers employed as the Will's scrivener. Furthermore, given the paucity of record information about the Estate noted above, we are unable to

consider the relevant circumstances surrounding Decedent at the time she executed the Will to discern the correct meaning.

Accordingly, we vacate the order interpreting the Will and denying the petition for declaratory judgment  We remand for the orphans' court to conduct a hearing at which the parties may offer extrinsic evidence concerning Decedent's intent at the time she made her will to resolve the ambiguity created by Attorney Meyers's verbiage.  Such evidence may include the circumstances in which Decedent was surrounded in the spring of 2020, such as the amount and character of her assets, *see Estate of Cassidy*, 296 A.3d at 1223, as well as the testimony of the scrivener or others to whom Decedent relayed her plans at the time of the Will's drafting.  *See Estate of Tscherneff*, 203 A.3d at 1024.  The orphans' court shall then interpret the Will in light of the evidence and issue a new declaration of its meaning.

Order vacated.  Case remanded with instructions.  Jurisdiction relinquished.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 07/17/2026

- 16 -